# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| EMPLOYEE BENEFIT MANAGERS, INCORPORATED, OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:04-CV-443-TS |
| A MEDEX TRANSITION ADMINISTRATION COMPANY LTD., DARREN THOMAS, MARY RAE ARMACOLLA, MARGARET TOWNEY, GENERAL MEDITERRANEAN HOLDING SA, GMIS SA, NADHMI S. AUCHI, MOHAMED BAYOUMI, TOWER RISK MANAGEMENT HOLDINGS LIMITED, TOWER RISK MANAGEMENT LIMITED, PAUL TOWEY, SUSAN HAMPSON, RELIANCE PARTNERS, RELIANCE PARTNERS LLC, CHRISTOPHER HASKINS, MEDICAL CAPITAL CORPORATION, INC., and U.S. CAPITAL INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on an April 14, 2005, Motion for Leave to File First Amended Complaint [DE 60] and a May 11, 2005, Motion to Vacate [DE 72], both filed by Plaintiff Employee Benefit Managers, Incorporate, of America (EBM). The Plaintiff moves the Court to vacate its April 1, 2005, Order in which the Court dismissed Defendant Medical Capital Corporation under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Plaintiff seeks to vacate the dismissal so that it can file an Amended Complaint against all the Defendants, including the previously dismissed Medical Capital.

Motions to dismiss filed by the other named Defendants are also pending before this Court

and will be addressed in this Opinion and Order.

# BACKGROUND

On November 23, 2004, EBM filed a Complaint in this Court against A Medex Transition Company Ltd. (AMTAC) and its officers, Darren Thomas, Mary Rae Armacolla, and Margaret Towey. The Plaintiff also named General Mediterranean Holdings SA (Gen Med) and its officers, Nadhmi S. Auchi and Mohamed Bayoumi and an affiliate, GMISS SA. In addition, the Plaintiff sued Tower Risk Management Holdings Limited, Tower Risk Management Limited and their principal, Paul Towey, and representative, Susan Hampson. The Plaintiff also asserted claims against Reliance Partners, Reliance Partners LLC, Christopher Haskins, Medical Capital Corporation, Inc., and U.S. Capital, Inc. The Plaintiff submitted that the Court had jurisdiction pursuant to 28 U.S.C. § 1332.

In its Complaint, the Plaintiff asserted that the AMTAC and Gen Med Defendants fraudulently induced the Plaintiff to enter into a contract, that AMTAC breached the contract, that the Plaintiff relied on material misrepresentations made by all the Defendants, and that all the Defendants committed fraud against it. The Plaintiff sought damages and declaratory relief.

On December 22, 2004, Reliance Partners, Reliance Partners LLC, Christopher Haskins, and U.S. Capital filed their Answer. On January 11, 2005, the Plaintiff moved for an entry of default against AMTAC and Tower Risk Management Holdings Limited and the Clerk made an entry of default. On February 3, 2005, the entry of default was set aside upon a joint motion of the parties.

On January 27, 2005, Medical Capital moved to dismiss the Complaint against it for failure to state a claim and for lack of personal jurisdiction. The Plaintiff responded on February 18, 2005. On February 24, 2005, Medical Capital replied.

On March 15, 2005, AMTAC filed an Answer and Counterclaim, and Darren Thomas, Mary Rae Armacolla, Margaret Towey, Tower Risk Management Holdings Limited, and Tower Risk Management Limited filed a Motion to Dismiss under Rules 12(b)(2) and (b)(6).

On April 1, 2005, the Court granted Medical Capital's Motion to Dismiss under Rule 12(b)(6) and dismissed the Plaintiff's claims against it with prejudice.

On April 14, 2005, the Plaintiff requested leave to file its first amended complaint to assert previously unknown facts and to correct "technical defects" in the original Complaint. Medical Capital opposed the motion to the extent it attempted to name Medical Capital as a Defendant because it was already dismissed from the case with prejudice and, thus, there was no complaint against it to amend. On May 11, 2005, the Plaintiff, following the Magistrate Judge's instruction, moved to vacate the Court's dismissal of Medical Capital, hoping to clear the way for it to file its Amended Complaint. On June 10, 2005, Medical Capital filed its opposition to the Motion to Vacate. On July 6, 2005, the Plaintiff replied.

Most of the Defendants have opposed the Plaintiff's Motion to File First Amended Complaint and moved to dismiss the Plaintiff's claims against them either for lack of jurisdiction or for failure to state a claim upon which relief may be granted. The jurisdictional arguments have been stayed by the Court until resolution of the motion to file amended complaint.

**DISCUSSION**

**(A) Motion to Vacate and to Amend Complaint Against Medical Capital**

In its Motion to Vacate, the Plaintiff argues that it has a right to file an amended complaint against Medical Capital because the Motion to Dismiss, which was the subject of the Court's order

dismissing Medical Capital, was not a responsive pleading. The Plaintiff provides that its Motion to Vacate is filed pursuant to Rules 15(a), 59, and 60.

Medical Capital argues that the Plaintiff's Motion is untimely under Rule 59 and does not establish that the Plaintiff is entitled to relief from judgment under Rule 60. Medical Capital submits that amending the Complaint is not appropriate under Rule 15(a) because the claims against it were dismissed with prejudice and, thus, were adjudicated on their merits. It also argues that the proposed amendments should not be allowed because they could not survive a second motion to dismiss for failure to state a claim.

The Plaintiff counters that the Court did not enter final judgment when it granted Medical Capital's Motion to Dismiss, but retained jurisdiction of the case. The Plaintiff also submits that the amended complaint states a valid claim for relief because of the additional allegations regarding EBM's third party beneficiary status, the Defendants' agency relationships, and the Defendants' conspiracy to defraud.

Rule 15(a) provides in relevant part that: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "When there has been an entry of final judgment, a complaining party may amend a complaint pursuant to Rule 15(a) only after that party has successfully altered or amended the judgment pursuant to Rule 59(e) or the judgment has been vacated pursuant to Rule 60(b)." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 790 (7th Cir. 2004); *Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 270 (7th Cir. 1994); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir. 1984) (stating that once the

court has dismissed a suit, the plaintiff may either appeal the judgment or seek leave to amend under Rule 15(a) after having the judgment reopened under either Rule 59 or Rule 60).

Here, no final judgment was entered, and indeed, could not be entered unless the Court used specific language in its order granting Medical Capital's motion to dismiss. *See* Fed. R. Civ. P. 54(b) (explaining that court may direct entry of final judgment as to fewer than all of the parties if it uses express language delineated in the Rule); *see generally* Fed. R. Civ. P. 58 (stating that every judgment must be set forth on a separate document). Here, the Court did not make the findings required by Rule 54 and the Clerk did not enter judgment pursuant to Rule 58. Because there is no final appealable order for the Plaintiff to appeal or to vacate, the Motion to Vacate is denied as moot.

There is also no "responsive pleading." *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir. 1984) ("It is well settled in this circuit that a motion to dismiss is not a 'responsive pleading' within the meaning of Rule 15(a).") (citing *Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1240 (7th Cir. 1981) and *Fuhrer v. Fuhrer*, 292 F.2d 140, 142 (7th Cir. 1961)). Thus, the Plaintiff retains its right to amend once as a matter of course under Rule 15(a). *Id.*; *see also LaBatt v. Twomey*, 513 F.2d 641, 651 (7th Cir. 1975) (finding that the plaintiff retained ability to amend as of right after a motion for summary judgment was filed).

Medical Capital argues that such right should not exist because the claims against it were dismissed with prejudice. This, however, is not an important distinction for Rule 15 amendment purposes. Rather, the relevant distinction is between dismissal of a complaint and dismissal of an action in its entirety. *See Car Carriers, Inc.*, 745 F.2d at 1111. In *Car Carriers, Inc.*, the Seventh Circuit stated that when only the original complaint has been dismissed, "the litigation has not been terminated and the plaintiff still retains his right to amend once as a matter of course under Rule

5

15(a)." *Id.* (citing *Peterson Steels, Inc. v. Seidmon*, 188 F.2d 193 (7th Cir. 1951)). The court went

on to explain "[t]hat the right does not, however, survive a dismissal of the entire action." *Id.* (citing

*Northlake Cmty. Hosp.*, 654 F.2d at 1240 and *Swam v. United States*, 327 F.2d 431 (7th Cir. 1964));

*see also Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995) ("A motion to dismiss does not

constitute a responsive pleading for purposes of Rule 15(a); thus, an order dismissing the original

complaint normally does not eliminate the plaintiff's right to amend once as a matter of right. If final

judgment is entered dismissing the case, however, the plaintiff loses that right." (citations omitted)).

  In this case, the Plaintiff's right to amend survives because only the claims against Medical

Capital, and not the entire action, were dismissed. The litigation has not been terminated and the

Plaintiff may amend its Complaint as a matter of course.

  However, this does not end the Court's inquiry because the "right" to amend is not absolute.

*Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 n.4 (7th Cir.

1998) (noting that "case law acknowledges one exception to the right to amend the complaint once

before the filing of a responsive pleading"); *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir.1991).

Even if no responsive pleading has been filed, a district court may deny leave to amend if the

proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a

second motion to dismiss. *Duda*, 133 F.3d at 1057 n.4; *Perkins*, 939 F.2d at 472 (citing *Foman v.

Davis*, 371 U.S. 178, 182 (1962)); *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir.1985); *Wakeen

v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1983); *Textor v. Bd. of Regents of N. Ill. Univ.*,

711 F.2d 1387, 1391 and n.1 (7th Cir. 1983); *Jafree v. Barber*, 689 F.2d 640, 644 (7th Cir.1982);

*Asher v. Harrington*, 461 F.2d 890, 895 (7th Cir.1972)); *see also Howard v. Philip Morris USA, Inc.*

98 Fed. Appx. 535, 537 (7th Cir. 2004) (holding that "a district court need not permit the filing of

an amended complaint, even before a responsive pleading has been filed, if the amended complaint fails to cure deficiencies in the original complaint"). "To hold otherwise would impose upon the defendants and the courts the arduous task of responding to an obviously futile gesture on the part of the plaintiffs. Rule 15(a) does not require the courts to undertake such an exercise." *Perkins*, 939 F.2d at 472. The Court must, therefore, address Medical Capital's arguments that the proposed Amended Complaint does not cure the original Complaint's deficiencies.

**(1) *Amended Claims Against Medical Capital***

On April 1, 2005, the Court dismissed the claims against Medical Capital for failure to state a claim upon which relief could be granted. The Court determined that the Plaintiff's contract claim against Medical Capital failed because the only contract the Plaintiff referenced in its Complaint was the one it entered with AMTAC. There was no mention of Medical Capital in this contract and any failure by AMTAC to fulfill its contractual obligation to the Plaintiff to obtain a letter of credit did not state a cause of action in contract against Medical Capital.

The Court also dismissed the Plaintiff's fraud claim against Medical Capital because it could not premise its fraud claim on statements that were not made to it and the Complaint was devoid of any representation made by Medical Capital to the Plaintiff.

In its proposed First Amended Complaint for Damages and Declaratory Relief, the Plaintiff attempts to cure the deficiencies noted by the Court. It does not do so by alleging that Medical Capital was a party to the Plaintiff's contract with AMTAC or that Medical Capital had any communications with the Plaintiff. Rather, the Plaintiff asserts its third party beneficiary status and alleges that all the parties were agents of each other and conspired to defraud the Plaintiff.

In its original Complaint, the Plaintiff alleged that Medical Capital agreed to provide certain funding to the Reliance Co-Defendants (who in turn represented this to AMTAC who then communicated this to the Plaintiff). In its proposed amended complaint, the Plaintiff adds to this: it states that Medical Capital, in addition to agreeing to provide funding to the Reliance Defendants, also agreed to provide this funding to the other Co-Defendants and to the Plaintiff, "either directly or as intended third-party beneficiaries." (Am. Compl., ¶ 23.) Both the original and the amended complaint include a letter from Reliance Partners's Christopher Haskins to AMTAC's Darren Thomas representing that Reliance had secured financing for AMTAC through Medical Capital. (Am. Comp., Ex. 11.) The Plaintiff also asserts that the full details of the interrelationship between Reliance and Medical Capital is unknown to it and is within the exclusive knowledge and control of those Defendants. (*Id.*, ¶ 25.) The Plaintiff alleges that "at all times each of the Defendants acted as agents for each other in carrying out their conspiracy or scheme to defraud." (Am. Comp., ¶ 51.) The Plaintiff also adds paragraph forty-eight in support of its claim that the Defendants made fraudulent statements:

> That AMTAC represented on February 13, 2004 that "we have secured from Medical Capital Corporation, with the assistance of U.S. Capital, Inc., and their affiliate Reliance Partners, LLC for the refinancing and future development of the Company. The facility provides a total purchase facility of $25,000,000, with the initial envisaged funding available of $5,000,000", a true and correct copy of which letter is attached hereto, marked Exhibit "12" and incorporated herein by reference.

Exhibit 12 is a letter from AMTAC's Darren Thomas to the Plaintiff, informing it of the basic terms of the facility AMTAC secured from Medical Capital.

Medical Capital argues that the allegations in the First Amended Complaint regarding conspiracy and agency are legal conclusions that are not sufficient to defeat another motion to dismiss for failure to state a claim. Medical Capital submits that the contract and fraud claims still

8

fail because the amended complaint does not allege a contractual relationship between the Plaintiff and Medical Capital, nor does it allege a communication from Medical Capital to the Plaintiff. For these reasons, Medical Capital urges the Court to deny the Plaintiff leave to amend its Complaint.

The Plaintiff responds that it has stated viable claims because it alleges that it is an intended third-party beneficiary of the commitments made by the Defendants. It argues that Medical Capital played a supporting role in lending legitimacy to AMTAC by making claims and representations as to funding. The Plaintiff contends that "with all conspirators, [the Defendants] were acting as agents for each other." (DE 87 at 7.) The Plaintiff also notes that it is "interesting" that Reliance did not assert any cross claims against Medical Capital even though Medical Capital obviously failed to provide the funding that it promised to Reliance and to the Plaintiff.

Four types of claims can be gleaned from the Plaintiff's First Amended Complaint. First, that AMTAC breached its contract with the Plaintiff. Second, that the other Defendants breached contracts with AMTAC, which the Plaintiff can enforce through its third-party beneficiary status. Third, that the Defendants committed fraud by making false representations regarding financing, either directly to the Plaintiff or to other Defendants. Fourth, that all the Defendants conspired to fraudulently induce the Plaintiff to enter into a contract with AMTAC and to continue to pay AMTAC money under the contract's terms, by falsely promising that funding was forthcoming. The first claim does not involve Medical Capital. The other three claims are addressed below.

(a) *Breach of Contract*

The Plaintiff alleges that Medical Capital breached a contractual commitment to which the

Plaintiff was a third party beneficiary.

"Generally, only parties to a contract or those in privity with them have the right to recover under a contract." *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001). However, one not a party to the contract may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 561 (7th Cir. 2002).

> A third party does not have the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor. Rather, to enforce a contract by virtue of being a third-party beneficiary, the third-party beneficiary must show:
> (1) A clear intent by the actual parties to the contract to benefit the third party;
> (2) A duty imposed on one of the contracting parties in favor of the third party; and
> (3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.
> We have previously recognized that the intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party or by other evidence.

*Luhnow*, 760 N.E.2d at 628 (citations omitted); *see also Ind. Gaming Co., L.P. v. Blevins*, 724 N.E.2d 274, 277 (Ind. Ct. App. 2000).

One flaw in the Plaintiff's third party beneficiary claim is that the Plaintiff has not alleged that Medical Capital became a party to a contract to which the Plaintiff could be a third party beneficiary. The Plaintiff contends that it was an intended third party beneficiary to the "commitments" the Defendants made to provide funding. (Am. Comp., ¶ 50.) The Plaintiff attaches three letters to its Amended Complaint: two letters from Reliance Partners to AMTAC, in which it represents that it had secured financing for AMTAC through Medical Capital, and a third letter from AMTAC to the Plaintiff representing that it secured financing from Medical Capital. But the Amended Complaint does not reference or attach any writings or contracts between Reliance

Partners and Medical Capital, or AMTAC and Medical Capital, that would bind Medical Capital to those parties or to the Plaintiff as a third party beneficiary.

The Plaintiff's breach of contract claim against Medical Capital could not survive a motion to dismiss, even as amended.

(b) *Fraud*

To prevail in an actual fraud claim under Indiana law, the plaintiff must prove the following elements: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Lycan v. Walters*, 904 F. Supp. 884, 897 (S.D. Ind. 1995) (quoting *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992)).

When claiming fraud, Rule 9(b) requires that a plaintiff state the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b). The Seventh Circuit has held this to mean that the plaintiff must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *UniQuality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The Plaintiff provides the requisite 9(b) details in paragraphs 52(A)–(O) and the exhibits attached to the Amended Complaint. However, just as with the original Complaint, none of the alleged misrepresentations were made by Medical Capital to the Plaintiff. The Complaint provides that Reliance Partners made representations to AMTAC that it had secured financing through Medical Capital and that AMTAC, in turn, made

a representation to the Plaintiff in a February 13, 2004, letter regarding this financing. (Am. Compl., ¶ 52(N), (O), Exs 10, 11 and 12.) Although it can be reasonably inferred from the Amended Complaint either that Medical Capital agreed to provide such financing, or that Reliance, in communicating with AMTAC, misstated Medical Capital's commitment, it is not stated, and cannot be reasonably inferred, that Medical Capital made any representations directly to the Plaintiff regarding such financing. Therefore, there are no statements upon which the Plaintiff can base a claim of fraud against Medical Capital.

*Lycan v. Walters,* 904 F. Supp. 884 (S.D. Ind. 1995), supports dismissal of the Plaintiff's fraud claim. In *Lycan,* the court dismissed claims against those defendant who made no direct misrepresentations to the plaintiffs, despite the case involving a complex scheme to defraud, involving eleven defendants who allegedly defrauded several investors by inducing them to invest in a venture to acquire the assets of a bankrupt entity. 904 F. Supp. 884, 890–97 (S.D. Ind. 1995). The court reasoned:

> The Plaintiffs have failed to point to any misrepresentations by any of these three defendants to support a claim for actual fraud. The Rally Defendants have consistently stated that they never had any direct personal contact or written communication with any of the Plaintiffs. The Plaintiffs have not disputed this position, nor have they provided this Court with any evidence to the contrary. Furthermore, Plaintiffs' brief does not list any misrepresentations made to them by these three Defendants, and no appropriate evidentiary material has been designated. Plaintiffs appear to rely on the May 20, 1991, Letter of Intent as evidence of misrepresentations by the Rally Defendants. This reliance is misplaced. While Garcia did sign this letter, both individually and on behalf of Rally Group and Rally Ventures, the Letter was addressed to Prime Corporation—not to Jeannette Lycan, Millard Pauley, or Gray Farms, Inc. Simply stated, *Plaintiffs cannot premise their fraud claim on statements that were not made to them.*

*Id.* at 897 (emphasis added). In *Baxter v. I.S.T.A. Ins. Trust,* 749 N.E.2d 47, 52 (Ind. Ct. App. 2001), the plaintiff admitted that misrepresentations were not made to her, but nevertheless argued that "a

fraud claim by a third person injured by deceit should be recognized in Indiana." The court disagreed and refused to recognize such an exception to the well established rule regarding reliance and direct communication that was reiterated in *Lycan*. 749 N.E.2d at 53–54.

Here, there is even less than in *Lycan* upon which to base a claim for fraud. In *Lycan*, the dismissed parties made representations of some sort to a third party. Here, there is no representation alleged by Medical Capital—just representations from others about what they believed Medical Capital would do. The Plaintiff cannot premise its fraud claim on representations that were not addressed to it and the Plaintiff has failed to state a claim for fraud against Medical Capital.

Presumably to cure the deficiency that a claim of fraud cannot be based on representations made to third parties, the Plaintiff contends that all the Defendants acted as agents for each other in carrying out their conspiracy or scheme to defraud. (Am. Comp., ¶ 51.) In this way, the Plaintiff hopes that any representation AMTAC made to it can be imputed to the other Defendants, including Medical Capital.

The Court does not find that the Plaintiff's new allegations of agency cure the deficiencies in the fraud claim. The Plaintiff has not provided any facts in support of his broad legal conclusion regarding multiple layers of agency.  The Plaintiff presents nothing in its Complaint from which it can reasonably be inferred that AMTAC, the entity that actually made representations to the Plaintiff, had any authority to act as Medical Capital's agent.[1] A plaintiff may not avoid dismissal simply by attaching bare legal conclusions to narrated facts that fail to support his claims. *Strauss v. City of Chicago*, 760 F.2d 765, 767–68 (7th Cir. 1984); *Sutliff, Inc. v. Donavan Cos.*, 727 F.2d

---

[1] In fact, the Plaintiff does not even identify Medical Capital, or any other party, as the principal. It asserts that all the Defendants were acting as agents "for each other."  However, by definition, an agent must be under the control of a principal. *See Hope Lutheran Church v. Chellew*, 460 N.E.2d 1244, 1247 (Ind. Ct. App. 1984).

648, 654 (7th Cir. 1984); *see also Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988)

(holding that the federal rules require that a complaint allege facts that, if proven, would provide an

adequate basis for each claim). Moreover, when a plaintiff relies on the same circumstances to

establish both fraud and an agency relationship, the particularized pleading requirements of Rule

9(b) apply. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). In

*Lachmund*, the plaintiff relied on its allegation of conspiracy to allege an agency relationship. *Id.*

The court determined that the plaintiff did not adequately plead agency. *Id.* Here, the Plaintiff does

not provide specifics regarding the relationship between AMTAC and General Medical, but merely

alleges that the Defendants were each others agents in carrying out their conspiracy to defraud the

Plaintiff.

The Plaintiffs proposed amendments are futile to cure the deficiencies in the fraud claim

against Medical Capital.


(c) *Conspiracy or Scheme to Defraud*

The demise of the fraud claim does not necessarily prevent the Plaintiff from proceeding with

its civil conspiracy claim. *See, e.g., Banco Del Atlantico, S.A. v. Stauder*, 2005 WL 1925830, at *12

(S.D. Ind. Aug. 11, 2005) (allowing civil conspiracy claim to proceed against same defendants

against whom fraud claim was dismissed because they were not alleged to have made

misrepresentation to the plaintiffs); *ABN Amro Mortgage Group, Inc. v. Maximum Mortgage, Inc.*,

2005 WL 1162889, at * 6 (N.D. Ind. May 16, 2005) (dismissing fraud claims against defendant who

did not make representations to the plaintiff but allowing claim for civil conspiracy to commit

fraud).[2] However, the Court notes that if it had accepted the Plaintiff's agency claims, the Plaintiff's conspiracy claim would fail as a matter of law. Civil conspiracy is defined as a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998) "It is basic to the law of conspiracy that there must be at least two persons or entities to constitute a conspiracy. A corporation cannot conspire with an agent when that agent is acting within the scope of his authority. A corporation acts through its agents and the acts of the agent are the acts of the corporation." *Soft Water Utilities, Inc. v. LeFevre*, 308 N.E.2d 395, 399 (Ind. Ct. App. 1974). Thus, if AMTAC was truly acting as an agent for Medical Capital, they could not conspire together because their acts would be considered the act of only one entity.

Ignoring the Plaintiff's unsubstantiated and incongruous claims of agency, the Court turns to the Plaintiff's conspiracy claim. In Indiana, "[t]here is no independent cause of action in tort based solely on the existence of a civil conspiracy. Rather, the cause of action is for the damages that result from the conspiracy. In other words, allegations of a civil conspiracy are just another way of asserting concerted action in the commission of a tort." *Boyle v. Anderson Fire Fighters Ass'n Local 1262*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986) (citations omitted); *Durakool, Inc. v. Mercury Displacements Indus., Inc.*, 422 N.E.2d 680, 682 (Ind. Ct. App. 1981) (noting that there is no cause of action for conspiracy and that the proper cause of action is for damage resulting from a conspiracy). "If the complaint is to state a valid cause of action, the plaintiff must allege that the defendants conspired to accomplish an unlawful purpose or a lawful purpose by unlawful means."

---

[2] In *ABN Amro Mortgage*, the defendants conceded that the plaintiffs had stated a claim for civil conspiracy despite failing to state a cause of action for fraud.

*Durakool*, 422 N.E.2d at 682.

Here, the damages resulting from the alleged concerted action is that the Plaintiff paid money to AMTAC under the operating agreement without receiving its contractual benefit in return when AMTAC failed to secure a letter of credit. The purpose of the conspiracy, as alleged in the amended complaint, was to induce the Plaintiff to enter a contract with AMTAC and to pay AMTAC according to the terms of that contract. This is not itself an unlawful purpose. The issue then, is whether the Plaintiff has stated a claim that the Defendants agreed to accomplish the lawful purpose of forming a contract, and receiving payment under its terms, by unlawful means, i.e., by making false representations. *See, e.g., Durakool*, 422 N.E.2d at 682 (stating that because forming a company that would compete with the plaintiff was not an unlawful purpose, the question was whether the defendants agreed to accomplish the lawful purpose of forming the company "by unlawful means, i.e., the appropriation of confidential engineering drawings, data and secret processes belonging to [the plaintiff]").

If the Plaintiff has adequately pled a conspiracy to make false representations, Medical Capital need not be the party making the representations to be held liable. "All who knowingly enter a fraudulent scheme become liable for the harm caused by the scheme—even if their part of the scheme does not entail making fraudulent representations." *Schmidt Enters., Inc. v. State*, 354 N.E.2d 247, 638 (Ind. Ct. App. 1976); *see also Simpson v. Aetna Fin. Co.*, 523 N.E.2d 762, 764 n.2 (Ind. Ct. App. 1988) (noting its agreement with the proposition in *Schmidt* but finding it inapplicable to the case before it).

Paragraph 45 of the Plaintiff's Amended Complaint provides that the "AMTAC Defendants" (AMTAC, Darren Thomas, Mary Rae Armacolla, and Margaret Towey), the "Gen Med Defendants"

(Gen Med, GMIS, Nadhmi Auchi, and Mohamed Bayoumi), and the "Tower Defendants" (Tower Risk Holding, Tower Risk Management, Paul Towey, and Susan Hampson) were involved in the "conspiracy and scheme to defraud EBM." (Am. Comp., ¶ 45.) The Plaintiff states that the it relied on representations from the Gen Med Defendants and was fraudulently induced into entering the contract with AMTAC. (Am. Comp., ¶ 34.) It states that it was further induced to continue sending funds to AMTAC by the misrepresentations outlined in the Amended Complaint. (Am. Comp., ¶ 49.)

Paragraph 45 does not name Medical Capital or the "Reliance Partners Defendants," with whom the Plaintiff lumped Medical Capital for identification purposes. It appears from this paragraph that Medical Capital is excluded from the conspiracy charge. Four paragraphs later, the Plaintiff states that it "relied upon all of the representations outlined above . . . in continuing to send funds to the AMTAC Defendants." (Am. Comp., ¶ 49.) Again, none of the representations "outlined above" were made by Medical Capital.[3] The combination of the Plaintiff's decision not to include Medical Capital as a conspirator in paragraph 45 and its statement that it relied upon representations, none of which were made by Medical Capital, lead to the conclusion that the Plaintiff has not stated a claim for civil conspiracy against Medical Capital. The Plaintiff has not alleged that Medical Capital was aware of a plan to defraud it, participated in that plan, or received a benefit from any participation in the plan.

As with the breach of contract and fraud claims, the Plaintiff has not sufficiently pled its civil conspiracy claim against Medical Capital and the Amended Complaint would not survive a second

_____

[3] However, just two paragraphs later, the Plaintiff claims that "at all times each of the Defendants acted as agents for each other in carrying out their conspiracy or scheme to defraud." (Am. Comp., ¶ 51.) As the Court stated earlier, if the agency claim is believed, no conspiracy could exist at all.

motion to dismiss. Accordingly, the Court denies the Plaintiff leave to file its First Amended Complaint against Medical Capital.


**B. Other Defendants**

The remaining Defendants have either filed answers, motions to dismiss the Plaintiff's first amended complaint, briefs opposing the Plaintiff's request for leave to file first amended complaint, or some combination thereof. The Court will address these motions in connection with the Plaintiff's Motion for Leave to File First Amended Complaint.


(1) *Reliance Defendants*

On December 22, 2004, Reliance Partners, Reliance Partners LLC, Christopher Haskins, and U.S. Capital (Reliance Defendants) filed an Answer. On June 9, 2005, these same Defendants moved to dismiss the Plaintiff's Complaint under Rule 12(b)(6) and objected to the Plaintiff's motion to amend, arguing that it would be futile [DE 74].

The Reliance Defendants contend that the Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted against it and the motion to amend is, therefore, futile. They submit that the original Complaint failed to state a claim for fraud because it only alleged that the Reliance Defendants made misrepresentations to a third party, which cannot form the basis of a fraud claim. The Reliance Defendants assert that the proposed amended complaint is also deficient because it still does not allege any direct communication between the Reliance Defendants and the Plaintiff. The Reliance Defendants also argue that the conspiracy claim fails because the Plaintiff has not alleged that they profited or received fruits from the scheme and has not asserted any facts

to connect the Reliance Defendants to the scheme.

Because the Reliance Defendants have filed an Answer, the Plaintiff may not amend its complaint without leave of court, which should "be freely given when justice so requires." Fed. R. Civ. P. 15(a). If there is no evidence of undue delay, bad faith or dilatory motive on the part of the Plaintiff, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to AMTAC by allowing the amendment, or futility of amendment, the Court must grant the Plaintiff leave file its First Amended Complaint against AMTAC.

The Court denies the Plaintiff leave to amend as to the Reliance Defendants because the amendment would be futile. The Plaintiff's fraud and contract claims against the Reliance Defendants fail for the same reasons that the they failed against Medical Capital. The Plaintiff has not pointed to a direct communication between any of the Reliance Defendants and the Plaintiff. Nor has it referenced a contract it could enforce as a third party beneficiary. (Am. Comp., ¶ 47) (referring to "letters" from Haskins to AMTAC); (Am. Comp., ¶ 50) (referring to "commitments"). As to the conspiracy claim, the Plaintiff, does not include the Reliance Defendants as a participant in the conspiracy. (Am. Comp., ¶ 45.) Although the Plaintiff alleges that it relied on representations from Reliance Partners (to AMTAC) that it was providing a $25 million purchase facility (Am. Comp., ¶¶ 47–49), these allegations go to the fraud claim—whether the Defendants made statements upon which the Plaintiff relied. They do not present a fact indicating an agreement between the parties to participate in a conspiracy. Viewing the First Amended Complaint in its entirety, the Plaintiff has not alleged that there was a common plan that was known to, and participated in by, the Reliance Defendants or otherwise asserted facts to connect them to the alleged scheme.

The Plaintiff's First Amended Complaint would be futile against the Reliance Defendants,

and leave to file the amended pleading is denied as to these Defendants. The Reliance Defendants Motion to Dismiss [DE 74] is granted. The claims against Reliance Partners, Reliance Partners LLC, Christopher Haskins, and U.S. Capital are dismissed.

(2) *Paul Towey and Susan Hampson*

On June 10, 2005, Defendants Paul Towey and Susan Hampson moved to dismiss the Plaintiff's Complaint under Rules 12(b)(2) and (b)(6) [DE 77]. This motion became moot when the Plaintiff sought to amend its complaint. On August 10, 2005, Towey and Hampson filed a Motion to Dismiss the Amended Complaint [DE 92]. Per the Court's order staying argument regarding personal jurisdiction, the August 10 motion omitted such discussion.

The Plaintiff alleges that Towey is a principal of Tower Holdings and that Hampson is a representative of Tower Holdings. It designates Towey and Hampson as part of the "Tower Defendants" along with Tower Risk Holdings and Tower Risk Management. (Am. Comp., ¶ 19.) The Plaintiff alleges generally that the "Tower Defendants" made false representations (Am. Comp., ¶ 19) and "engaged in fraudulent conduct and a conspiracy or scheme to defraud" the Plaintiff (Am. Comp., ¶ 45). The Plaintiff also contends that it was a third party beneficiary of commitments the Tower Defendants made to provide funding. (Am. Comp., ¶ 50.) To support these allegations, the Plaintiff attaches an email that Hampson sent to the Plaintiff reporting that Towey had a meeting with Nadhmi Auchi. (Am. Comp., ¶ 52(L) and Ex. 8.) The Plaintiff contends that Hampson's representations about a meeting were not true. (Am. Comp., ¶ 52(L).) The email from Hampson "on behalf of Paul Towey" provides: "Please be advised that Paul Towey had a very good meeting yesterday with Mr. Auchi. The person handling this transaction is now in London and Mr. Auchi

20

is meeting with him to ensure that he brings matters to a swift and satisfactory conclusion." (Am. Comp., Ex 8.) Towey is also mentioned in paragraph 52(C), in which the Plaintiff alleges that it was fraud for GMIS SA to represent that it had discussions with Towey because GMIS SA was a previously liquidated company. (Am. Comp, ¶ 52(C) and Ex. 1.)

Towey and Hampson contend that the Plaintiff does not assert acts or omissions by either party that would hint as to why they are in this lawsuit. Towey asserts that no misrepresentation is attributed to him. Hampson argues that she only reported that a meeting took place, and that such a representation is simply not the stuff that fraud is made of. She contends that her statement regarding bringing "matters to a swift and satisfactory conclusion" is not a material representation of a past or existing fact, but references a promise to do a thing in the future, which is not actionable. Towey and Hampson do not address the conspiracy claim.

The Court finds that the Plaintiff has not stated a claim for relief against Towey or Hampson for breach of contract, in a third party beneficiary status or otherwise. The Plaintiff does not reference any contract under which these defendants were bound.

In support of its fraud claim, the Plaintiff attaches a correspondence from Hampson. It contains a representation related to a past event, that Towey had a good meeting with Auchi, and a present event, that Auchi was meeting with a third person to ensure that matters were brought to a swift and satisfactory conclusion. The Plaintiff would not be justified in relying on, and concluding from, Hampson's email that matters would indeed be concluded swiftly and satisfactorily. However, it can reasonably be inferred from the amended complaint that the Plaintiff believes that the statement that Towey was meeting with Auchi was itself a false statement constituting fraud. (Am. Comp., ¶ 52(L).) Therefore, the Plaintiff may proceed with its fraud claim against Hampson and

against Towey on the theory that Hampson was acting as an agent of Towey when she reported the meeting. (Am. Comp., Ex. 8) (email signed by Hampson "on behalf of Paul Towey"); (Am. Comp, ¶ 51) (alleging that all the Defendants were acting as agents for each other).

The Plaintiff has also stated a cognizable claim against Towey and Hampson for civil conspiracy. The Plaintiff alleges that they were part of the conspiracy (Am. Comp., ¶ 45) and states that they made false representations for the purpose of advancing their interests and the interests of others (Am. Comp., ¶ 19) by, for example, representing that Towey had a meeting with Auchi (Am. Comp., ¶ 43), which the Plaintiff relied upon to continue to send funds to AMTAC (Am. Comp., ¶ 49). The Plaintiff has sufficiently alleged that Hampson and Towey were part of a conspiracy, or plan, to use unlawful means to accomplish the lawful purpose of receiving contractual payment from the Plaintiff.

The Plaintiff is granted leave to file its First Amended Complaint against Towey and Hampson. However, the breach of contract claims against Towey and Hampson are dismissed. Towey and Hampson's Motion to Dismiss the Plaintiff's Complaint [DE 77] is denied as moot by the filing of the Plaintiff's motion to amend its complaint. Their Motion to Dismiss the amended complaint [DE 92] is granted in part and denied in part.


(3) *Gen. Med. and Auchi*

On June 10, 2005, Defendants General Mediterranean Holdings SA (Gen Med) and Nadhmi S. Auchi moved to dismiss the Plaintiff's Complaint pursuant to Rules 12(b)(2) and (b)(6) [DE 82]. On August 10, these Defendants filed the same motion with respect to the Plaintiff's First Amended Complaint [DE 90].

In its First Amended Complaint, the Plaintiff alleges that Gen Med had a business relationship with AMTAC to provide funding to AMTAC and to the Plaintiff as a third party beneficiary. (Amd. Comp., ¶ 8.) The Plaintiff alleges that Auchi is the founder and chairman of Gen Med (Am. Comp., ¶ 10) and that GMIS SA is "somehow affiliated with Gen Med" (Am. Comp., ¶ 9). The Plaintiff contends that Gen Med and Auchi made representations committing to provide funding that it never provided. The Plaintiff points to various letters from GMIS SA, signed by Mohamed Bayoumi, and addressed to Darren Thomas representing that GMIS SA was procuring a letter of credit to support a funding source. (Am. Comp., Ex. 1, 6, 7.) The Plaintiff contends that these representations were not true and that the funding source never materialized. (Am. Comp., ¶ 42.) The Plaintiff asserts that after filing the original Complaint, it learned from the General Public Prosecutor of Luxembourg that GMIS SA was liquidated twelve years ago in Great Britain, and that the documents signed by Bayoumi were forgeries. (Am. Comp., ¶ 44, Ex. 9.)

Gen Med and Auchi argue in their Motion to Dismiss that the Court does not have jurisdiction over them. The Court will not address the jurisdictional arguments per its order to stay briefing on that issue. However, Gen Med and Auchi also submit that the Plaintiff's claims against it should be dismissed under Rule 12(b)(6).

Gen Med and Auchi contend that the Plaintiff has not charged Gen Med and Auchi with any misrepresentations. The amended complaint only indicates that they told AMTAC that it would receive funding. Indeed, the amended complaint is devoid of any communication between Gen Med and the Plaintiff or Auchi and the Plaintiff. The Plaintiff cannot state a claim for fraud without such communication. *Lycan*, 904 F. Supp. at 897.

The Court finds that the contract claim must also be dismissed. Gen Med and Auchi are not

a party to any contract with the Plaintiff. Nor is there any allegation that they were parties to a contract with AMTAC that the Plaintiff could enforce as a third party beneficiary. The Plaintiff points only to letters expressing an intent to provide funding, none of which are from Gen Med or Auchi.

However, the Plaintiff may proceed against Gen Med and Auchi on its conspiracy claim. The Plaintiff alleges that the Gen Med Defendants, individually and collectively, were part of the conspiracy to defraud. (Am. Comp., p 45.) Gen Med and Auchi are included in the Plaintiff's reference to the Gen Med Defendants. (Am. Comp., ¶13.) The Plaintiff contends that the Gen Med Defendants made false representations regarding funding (Am. Comp., ¶¶ 13, 42) and that it relied on these representations to enter the contract with AMTAC and to continue to send money to AMTAC (Am. Comp., ¶ 49). Although the representations that the Plaintiff specifically pleads to support its fraud claim were not made by Gen Med or Auchi, but by GMIS SA and Mohamed Bayoumi, the Plaintiff contends that Auchi is the founder and chairman of GMIS SA (Am. Comp., ¶ 10) and the Bayoumi is an officer or agent of Gen Med or GMIS SA (Am. Comp., ¶ 11). The Plaintiff asserts that the full details of the interrelationship between Gen Med, GMIS SA, Auchi, and Bayoumi are unknown to it and must await further development through discovery. (Am. Comp., ¶ 12.) The Court will not dismiss the conspiracy claim against Gen Med and Auchi for the Plaintiff's failure to plead a detail it cannot know without the benefit of discovery. Through its assertions, the Plaintiff has put Gen Med and Auchi on notice that they are alleged to have taken part in a conspiracy to induce the Plaintiff to enter a contract and make payments in accordance with that contract by using false statements and representations regarding funding.

The Plaintiff's motion to amend the conspiracy claim against Gen Med and Auchi is granted.

24

Gen Med and Auchi's Motion to Dismiss the complaint [DE 82] is denied as moot and their Motion to Dismiss the amended complaint [DE 90] is granted in part and denied in part.

(4) *AMTAC and Tower Defendants*

On March 15, 2005, AMTAC filed an Answer and Counterclaim. On this same date Darren Thomas, Mary Rae Armacolla, Margaret Towey, Tower Risk Management Holdings Limited, and Tower Risk Management Limited filed a motion to dismiss the Plaintiff's Complaint under Rules 12(b)(2) and 12(b)(6) [DE 53]. On June 10, 2005, Defendants AMTAC, Darren Thomas, Mary Rae Armacolla, Margaret Towey, Tower Risk Management Holdings Limited, and Tower Risk Management Limited moved to dismiss the Plaintiff's First Amended Complaint under Rules 12(b)(2) and (b)(6) [DE 80]. This motion, and the Plaintiff's motion file its amended complaint, rendered the March 15 motion moot.

AMTAC, who has filed a responsive pleading, and Thomas, Towey, Armacolla, and Tower all challenge the First Amended Complaint, arguing that it does not state a valid claim for relief. They argue that none of the attached exhibits or specific averments of fraud are representations by Thomas, Armacolla, or the Tower Risk Management Defendants. They also argue that some of the allegations of misrepresentations are merely allegations of an unfulfilled promise. The Defendants do not address the Plaintiff's claims for breach of contract.

The Court agrees with the Defendants that not all of the alleged misrepresentations are actionable. However, some of the communications involve statements of past or existing fact and the Plaintiff has sufficiently pled a cause of action for fraud against AMTAC and Thomas. Unlike the other Defendants named in this case, the Plaintiff can point to communications it received from

Thomas and AMTAC. There is no communication, however, from Armacolla and Margaret Towey as officers of AMTAC, or from Tower Risk Management Holdings Limited or Tower Risk Management Limited and the fraud claim against these Defendants must be dismissed.

The Plaintiff makes no particularized allegations regarding Armacolla and Towey, other than to identify them as officers of AMTAC. A corporate officer is not liable for the corporation's acts merely because he is an officer. *Am. Indep. Mgmt. Sys., Inc. v. McDaniel* 443 N.E.2d 98, 103 (Ind. Ct. App.1982) (citing *Birt v. St. Mary Mercy Hosp. of Gary, Inc.*, 370 N.E.2d 379, 382 (Ind. Ct. App. 1977); *see also Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1231–32 (Ind. 1994) (reasoning in breach of contract claim that although a corporation acts only through its agents, officers, shareholders, and employees, it is the corporate entity that is legally responsible for those acts as a legal entity separate and distinct from its shareholders and officers). An officer may, however, be liable if he personally participated in a tort, such as fraud. *McDaniel*, 443 N.E.2d at 103. Accordingly, the Plaintiff may proceed with its fraud claim against Thomas.

The Plaintiff alleges that the Tower Risk Management Defendants are believed to be insurance agents or brokers and that they purported to arrange for and transact business between AMTAC and Gen Med. (Am. Comp., ¶¶ 15, 16.) The Plaintiff alleges that they "engaged in acts and made representations which were false for the purpose of advancing their interests and the interests of others" (Am. Comp., ¶ 19), but does not provide any specific misrepresentations. The Plaintiff has failed to plead fraud with particularity as against the Tower Risk Management Defendants.

The Plaintiff has stated a claim for breach of contract against AMTAC, the only Defendant alleged to have entered a contract with the Plaintiff. (Am. Comp., ¶¶ 7, 34, Ex. 2.) The Plaintiff has not sufficiently stated a claim for breach of contract against Thomas, Armacolla, Towey, or the

Tower Risk Management Defendants.

Thomas signed the contract between AMTAC and the Plaintiff in his capacity as a representative for AMTAC. (Am. Comp., Ex. 2.) Armacolla and Towey are not parties to the contract and did not sign the contract. (*Id.*) Generally, directors and officers of a corporation are not individually liable for the contracts of their corporation. *Puller Mortgage Assocs., Inc. v. Keegan*, 829 F. Supp. 1507, 1520 (S.D. Ind.1993); *Winkler*, 638 N.E.2d at 1231 ("It is a matter of black-letter law that where the agent acted within the scope of the agent's authority in signing a contract on behalf of the principal, the remedy of one seeking to enforce the contract is against the principal and not the agent."). There are two exceptions to this general rule: (1) where an officer has personally guaranteed the corporation's obligation so as to assume liability as a guarantor, and (2) where (a) an officer has demonstrated disregard of the corporate form, treating the corporation essentially as a conduit for personal business affairs and (b) the imposition of personal liability is necessary to avoid injustice. *Keegan*, 829 F. Supp. at 1520 (citing *Weeks v. Kerr*, 486 N.E.2d 10, 12 (Ind. Ct. App. 1985)). Even under notice pleading standards, nothing in the Plaintiff's complaint indicates that the officers should be personally liable for AMTAC's contract with the Plaintiff. The breach of contract claims against Thomas, Armacolla, and Towey are dismissed.

As to the Tower Risk Management Defendants, the Plaintiff simply has not identified any contract to which they were a party and the breach of contract claim against them is dismissed as well.

The Plaintiff alleges that the "AMTAC Defendants" and the "Tower Defendants" engaged in fraudulent conduct and a conspiracy or scheme to defraud the Plaintiff. (Am. Comp., ¶ 45.) The Plaintiff contends that the AMTAC Defendants represented that they had a letter of credit and

funding, but that these representations were untrue. (Am. Comp, ¶ 37.) The Plaintiff states that it relied on misrepresentations to continue to send funds to the AMTAC Defendants (Am. Comp., ¶ 49) and sets forth these misrepresentations (Am. Comp., ¶¶ 38, 42, 48). From these allegations, the AMTAC Defendants, specifically AMTAC and Thomas, have notice that the Plaintiff contends they participated in a plan to induce the Plaintiff to enter a contract and continue to make payments under the contract even though AMTAC did not intend to keep its contractual obligations. However, it would be unreasonable to infer from the complaint allegations, that Armacolla, Towey, or the Tower Risk Management Defendants took part in this conspiracy. The Plaintiff's only allegation involving these Defendants is the conclusory statement that they engaged in a conspiracy. There are no facts supporting this allegation. Nothing in the complaint indicates that the representations the Plaintiff relied upon were made by these Defendants, supported by them, or directed by them for the common goal or plan of defrauding the Plaintiff. It would be futile for the Plaintiff to file an amended complaint to assert a claim of conspiracy against Armacolla, Towey, and the Tower Risk Management Defendants as such claims would not survive a motion to dismiss.

The Plaintiff is granted leave to file its First Amended Complaint against AMTAC for fraud, breach of contract, and conspiracy, and against Thomas for fraud and conspiracy. The claims against Armacolla, Towey, and the Tower Risk Management Defendants are dismissed. The breach of contract claim against Thomas is also dismissed.

## CONCLUSION

For the foregoing reasons,

(1)     The Plaintiff's Motion to Vacate [DE 72]  is DENIED as MOOT.

28

(2)     The Plaintiff's Motion for Leave to File First Amended Complaint [DE 60] is GRANTED in PART and DENIED in PART.

(3)     The Reliance Defendants' Motion to Dismiss [DE 74] is GRANTED. The claims against Reliance Partners, Reliance Partners LLC, Christopher Haskins, and U.S. Capital are dismissed.

(4)     Towey and Hampson's Motion to Dismiss the Complaint [DE 77] is DENIED as MOOT and their Motion to Dismiss the amended complaint [DE 92] is GRANTED in PART and DENIED in PART. The breach of contract claim against Towey and Hampson is dismissed.

(5)     Defendants General Mediterranean's and Nadhmi Auchi's Motion to Dismiss the Complaint [DE 82] is DENIED as MOOT and their Motion to Dismiss the First Amended Complaint [DE 90] is GRANTED in PART and DENIED in PART. The breach of contract and fraud claims against Gen Med and Auchi are dismissed.

(6)     The Motion to Dismiss the Plaintiff's Complaint [DE 53] filed by Tower Risk Management Limited, Tower Risk Management Holdings, Limited, Darren Thomas, Mary Rae Armacolla, and Margaret Towey is DENIED as MOOT and the Motion to Dismiss the First Amended Complaint [DE 80] filed by Tower Risk Management  Limited, Tower Risk Management Holdings, Limited, Darren Thomas, Mary Rae Armacolla, Margaret Towey, and AMTAC is GRANTED in PART and DENIED in PART. The breach of contract claim against Tower Risk Management  Limited, Tower Risk Management Holdings, Limited, Darren Thomas, Mary Rae Armacolla, and Margaret Towey is dismissed. The fraud claim against Tower Risk Management  Limited, Tower Risk Management Holdings, Limited, Mary Rae Armacolla, and Margaret Towey is dismissed. The conspiracy claim against Tower Risk Management

Limited, Tower Risk Management Holdings, Limited, Mary Rae Armacolla, and Margaret Towey is also dismissed.

In accordance with the above findings, the following claims remain:

(1)   Breach of contract claim against AMTAC.

(2)   Fraud claim against AMTAC, Darren Thomas, Paul Towey, and Susan Hampson.

(3)   Civil Conspiracy claim against AMTAC, Darren Thomas, General Mediterranean Holding SA, GMIS SA, Nadhmi S. Auchi, Mahamed Bayoumi, Paul Towey, and Susan Hampson.

The Defendants still remaining in this suit may renew any motions to dismiss on the basis of personal jurisdiction. Such motions are to be filed within thirty days of the issuance of this order.

SO ORDERED on October 12, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT