UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EMPLOYEE BENEFIT MANAGERS, INCORPORATED, OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:04-CV-443-TS |
| A MEDEX TRANSITION ADMINISTRATION COMPANY LIMITED, DARREN THOMAS, GENERAL MEDITERRANEAN HOLDING SA, GMIS SA, NADHMI S. AUCHI, MOHAMED BAYOUMI, PAUL TOWEY, and SUSAN HAMPSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [DE 96] filed on November 11, 2005, by Defendants General Mediterranean Holdings SA (Gen Med) and Nadhmi S. Auchi (Auchi). Gen Med and Auchi contend that the claims should be dismissed against them under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants Paul Towey and Susan Hampson have also moved to dismiss [DE 97] the Plaintiff's claims against them under Rule 12(b)(2) for lack of personal jurisdiction. In addition, the Defendants move to strike [DE 108] the Affidavit of Charles Henry Belch filed by the Plaintiff in opposition to the motions to dismiss.

**FACTS**

The Plaintiff, Employee Benefits Managers Incorporated, of America, (EBM) is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. EBM specializes in

arranging for employers, mostly located in Indiana, to create self-funded medical expense plans that are preempted from state insurance regulations by the Employee Retirement Income Security Act. Each employer in a self-funded plan must keep its funds separate from the other employers' funds and cannot borrow funds from another employer in the group. Therefore, independent funding sources are needed for each employer in the event that the employer needs to temporarily borrow money to meet claims in excess of the available prefunded amount. EBM entered into an agreement with Defendant A Medex Transition Administration Company Ltd. (AMTAC), a Delaware corporation, for AMTAC to provide this independent funding. The letter of credit that AMTAC agreed to obtain under the contract was to be established at a bank in Fort Wayne, Indiana.

Darren Thomas, the president of AMTAC, made trips and telephone calls to Fort Wayne to discuss the funding. He also made representations that he was making progress with Paul Towey and Nadhmi Auchi in connection with the funding his company was contracted to secure. In email messages that Thomas sent to EBM's Charles Belch and Nancy Vinson, he referred to contacts with Auchi and Towey and the progress that he had made with them to secure funding.

Defendant Paul Towey also contacted Belch at EBM in connection with the AMTAC funding. In his conversation with Belch, Towey referenced his contacts with Auchi and the progress he was making with Auchi in connection with the AMTAC funding. Also in connection with the funding, Towey sent email messages, through Susan Hampson's email account, to Nancy Vinson at EBM. Hampson herself also sent messages to Vinson, in which she referenced Towey's contacts with Auchi and the progress that he made with Auchi in connection with the AMTAC funding.

The Plaintiff believes that all these contact were made with the intent of creating a false impression that AMTAC would be fulfilling its funding obligations and was a substantial act in

2

furtherance of a conspiracy to defraud it. EBM also believes that the nature of the contacts establish an agency relationship between Towey, Hampson, Thomas, Auchi, and Gen Med.

The Plaintiff alleged in its Amended Complaint that Gen Med is a corporation and resident of Luxembourg and that Auchi is the founder and chairman of Gen Med and a resident of either the United Kingdom or Luxembourg. By way of affidavit, Auchi states that he is a British citizen, living in London, England. He contends that he serves as Chairman of the Directors of Gen Med, an investment group that was established in Luxembourg, Belgium, and has a second principal office in London. Gen Med and Auchi have never owned a business that was organized under, located in, or operated under the laws of, the State of Indiana and has no clients who reside in Indiana. They have no ownership interest in AMTAC or any other corporate Defendant.

The Plaintiff alleges in its Amended Complaint that Paul Towey is a principal of Tower Holdings, a Delaware corporation. Hampson is alleged to be a representative of Tower Holdings and a resident of the United Kingdom. The Plaintiff alleges that Thomas, the president of AMTAC, is also a resident of the United Kingdom.

## DISCUSSION

**A.     Personal Jurisdiction**

*1.     Standard of Review*

Personal jurisdiction is the court's power to bring a person into its adjudicative process and render a valid judgment over that person. *Saler v. Irick*, 800 N.E.2d 960 (Ind. Ct. App. 2003). Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal on the basis that the court lacks jurisdiction over it.

3

A complaint need not allege facts establishing personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, if a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Id.* The plaintiff may not rest upon allegations in his pleadings but must set forth specific facts showing that the court has jurisdiction *Int'l Steel Co. v. Charter Builders, Inc.*, 585 F. Supp. 816, 819 (S.D. Ind. 1984). Where the parties have not requested an evidentiary hearing, but have filed written submissions and affidavits, as they have here, the plaintiff is only required to make out a prima facie case of personal jurisdiction. *Id.*; *Nelson by Carson v. Park Indus., Inc*., 717 F.2d 1120, 1123 (7th Cir. 1983). The court accepts all factual conflicts in favor of the Plaintiff. *Purdue Research Found.*, 338 F.3d at 782; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

## 2.     *Personal Jurisdiction Over Nonresidents*

In diversity cases, a federal district court has personal jurisdiction over a nonresident "only if a court in which it sits would have such jurisdiction." *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998); *Wilson v. Humphreys Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990). In *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, the Indiana Supreme Court held that determining personal jurisdiction under Indiana law required a two-step approach: "First, the court must determine if the defendant's contacts with the forum state fall under the long-arm statute, [Indiana Trial Rule 4.4(A)].[1]  Second, if they do, the court must then determine whether the defendant's contacts satisfy federal due process analysis." 730 N.E.2d 1227, 1232 (Ind. 2000). However,

---

[1] Ind. Tr. R. 4.4(A) has been adopted and incorporated into the Indiana Code.  Ind. Code § 34-8-2-2. Although technically a trial rule, it performs the same function as a long-arm statute.

4

Indiana's long arm statute was amended effective January 1, 2003, to include the following language: "In addition [to these factors], a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. Tr. R. 4.4(A). With the addition of this language, the inquiry regarding the eight categories of actions is collapsed into a federal due process analysis. Thus, an Indiana state court would have personal jurisdiction over a defendant if the exercise of jurisdiction comports with federal due process. *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004); *Richards v. O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n.6 (Ind. Ct. App. 2002) (Najam, J. concurring); *but see Pozzo Truck Ctr., Inc. v. Crown Beds, Inc.*, 816 N.E.2d 966, 969–70 & n.2 (Ind. Ct. App. 2004) (stating that two part test still applies to determine specific personal jurisdiction even after the 2003 amendment to Trial Rule 4.4(A)).[2]

Due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Due process also requires that these contacts be "purposeful." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). How this standard is applied depends on whether the forum state asserts "specific" or "general" jurisdiction. Specific jurisdiction exists when the suit arises out of, or is related to, the defendant's minimum contacts with the forum state.

---

[2] Both the Plaintiff and the Defendants argue the jurisdictional issue using the two-step inquiry. However, this Court agrees with *Litmer*, that only the constitutional analysis is required in cases where jurisdiction is contested. The history of Indiana's long-arm rule supports this finding. The *Pozzo* decision deprives the amendment of any effect and ignores the plain meaning of the introductory phrase, "In addition." Thus, this Court believes that the highest court would reject the decision of the intermediate court and it is not authoritative. *See Miller v. Pardner's, Inc.*, 893 F.2d 932, 934 (7th Cir. 1990); *see also Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue.").

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). However, where the defendant's contacts with the forum state are "continuous and systematic general business contacts," and the basis of the suit does not arise out and is unrelated to these contacts, general jurisdiction exists. *Id*. at 416. For general jurisdiction, contacts must be so extensive as to amount to a constructive presence in the state. *Purdue Research*, 338 F.3d at 787 & n. 16.

Here, the Court must determine whether is has specific jurisdiction over Gen Med, Auchi, Towey, and Hampson.

### 3.     *Specific Jurisdiction*

An analysis of specific jurisdiction begins with the minimum contacts test annunciated by the Supreme Court in *International Shoe*. *See Purdue Research Found.*, 338 F.3d at 780. In order for certain contacts to be sufficient in maintaining jurisdiction by a forum state, the maintenance of the suit must not offend "traditional notions of fair play and substantial justice." *Int.'l Shoe*, 326 U.S. at 316. "[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there to answer for his conduct." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The acts must be purposeful, not a "random or fortuitous or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (internal quotations and citations omitted). A single contact with a forum state may be enough to establish specific personal jurisdiction as long as the contact creates a "substantial connection" with the state and is the basis of the suit. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957); *Snyder v. Smith*, 736 F.2d 409, 416 (7th Cir. 1984). To determine whether specific jurisdiction exists, the court must assess the relationship among the defendant, the

forum, and the litigation. *NUCOR v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir. 1994).

### 4.   *Analysis*

The following statements are accepted as fact for purposes of the pending motions to dismiss:

- EBM and AMTAC had a contract in which AMTAC agreed to obtain a letter of credit for EBM;

- AMTAC, through Darren Thomas, told Charlie Belcher and Nancy Vinson from EBM that it was working with Paul Towey and that Towey was making progress with another party, Nadhmi Auchi of Gen Med, to secure the financing; and

- Paul Towey and Susan Hampson also contacted EBM regarding Towey's progress with Auchi.

There is no allegation, or evidence, that Auchi himself ever contacted EBM or AMTAC. Everything that EBM alleged that it heard about Auchi's efforts and involvement came from either AMTAC's Thomas or from Towey or Hampson. EBM's claim against Gen Med, Auchi, Towey, and Hampson is that they were part of a conspiracy to defraud it because the Defendant never intended to provide the letter of credit. EBM offers several contacts that it believes are sufficient to warrant personal jurisdiction over the Defendants in Indiana.

None of the identified contacts were made by Auchi or Gen Med. Auchi and Gen Med have not made any purposeful contact with the State of Indiana such that jurisdiction is proper. *See Breneman v. Slusher*, 768 N.E.2d 451, 459–60 (Ind. Ct. App. 2002) ("We stress here that the contacts that are examined must be the purposeful acts of the defendant, not the acts of the plaintiff or any third parties."). Auchi's purported dealings with another nonresident Defendant (Towey) did not create a substantial connection with Indiana, even if that third party (Towey) intended to do

7

business with an entity (AMTAC) that had a contract with an Indiana corporation (EBM).

Because EBM cannot establish that Auchi and Gen Med contacted EBM, or any other person or entity located in Indiana, it attempts to hail these Defendants into this Court by linking them to other (nonresident) Defendants who did have contact with EBM. The Plaintiff believes that it can do this because an agency relationship existed among the parties. However, Belch's belief that Thomas, Towey, or any other Defendant, was an agent for Auchi or Gen Med is an unsupported legal conclusion.[3] An "agent is a substitute or deputy appointed by the principal with power to do certain things which the principal may or can do." *Fioretti v. Aztar Ind. Gaming Co., LLC*, 790 N.E.2d 587, 591 (Ind. Ct. App. 2003) (internal quotation marks and citations omitted). An agency relationship does not exist unless the principal consents to it, the agent acquiesces to it, and the principal exerts control over the agent. *Id.* In *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999), the court held that when the plaintiff relies upon the same circumstances to establish both alleged fraud and an agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim. Using this standard, the plaintiff's reliance on allegations of conspiracy and on substantive allegations of fraud to establish the agency relationship was not sufficiently particular. *Id.* (dismissing state law fraud claim because such general allegations did not contain the requisite particularity necessary to show that the defendant had vested actual or apparent authority in other entity to act on its behalf with respect to the contracts).

EBM has not presented any specific facts that would support a reasonable inference that

---

[3] The Defendants moved to strike portions of the Affidavit of Charles Belch [DE 108] as legal conclusions that only reiterate allegations in the Amended Complaint. The Court will not consider legal conclusions, unsupported by specific facts and lacking a basis in personal knowledge, and strikes such statements from the record. To the extent the Motion to Strike addresses these legal conclusions, it is granted.

Auchi authorized Towey or Thomas to do things on his or Gen Med's behalf, but has merely pointed to the alleged conspiracy to commit fraud. Moreover, independent of the inadequate showing of agency, the allegation of conspiracy between Auchi and the other Defendants, some of whom made contact with the Plaintiff in Indiana, is insufficient to confer personal jurisdiction. *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir.1992) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough."). The necessary minimum contacts do not exist such that this Court, in the Northern District of Indiana, can exercise jurisdiction over Auchi and Gen Med in accordance with the Due Process Clause. The Plaintiff has not shown a prima facie case of personal jurisdiction over these Defendants and they will be dismissed.

Towey and Hampson also argue that this Court does not have jurisdiction over them on the basis of their contacts with the forum state. They argue that they are British citizens whose only alleged contacts with Indiana are telephone calls and emails sent to Belch and Vinson at EBM. The Defendants contend that these contacts do not relate to the fraud or conspiracy claims against them because Belch did not testify in his Affidavit that the representations made during these communications were false. The Defendants argue that the Plaintiff's assertions do not establish a prima facie case of fraud or conspiracy, and thus, it cannot assert personal jurisdiction on these theories. The Defendants, in essence, believe that since their motion to dismiss is now before the Court under Rule 12(b)(2) for lack of personal jurisdiction, which requires the Plaintiff to make a prima facie showing of jurisdiction, that the Plaintiff must also establish a prima facie claim for fraud and conspiracy. The Defendant superimposes the standard for dismissal under 12(b)(2) to the Plaintiff's substantive claims.

This is not an accurate representation of the standard. The Plaintiff must prove a prima facie case of jurisdiction, not a prima facie case of each of the underlying claims. In this case, that means showing that Towey and Hampson had purposeful, minimum contacts that form the basis of the suit. EBM has done as much. Belch testified to specific contacts through email and telephone and the Amended Complaint makes it clear that the Plaintiff believes that the Defendants misrepresented the truth during these communications because the Defendants never intended to provide funding, but only to make it appear that the funding was forthcoming. Because Towey and Hampson contacted EBM directly, the Plaintiff does not rely on the same flawed general allegations of agency and conspiracy to assert personal jurisdiction that it did for Auchi and Gen Med. Towey and Hampson's motion to dismiss is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, the Motion to Dismiss [DE 96] filed by Gen Med and Auchi is GRANTED and the claims against them are dismissed. The Motion to Dismiss [DE 97] filed by Paul Towey and Susan Hampson is DENIED. The Motion to Strike [DE 108] is GRANTED to the extent that the Affidavit of Charles Belch contains legal conclusions.

SO ORDERED on April 24, 2006.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT